Good morning, Your Honor. This is Robert Rosati for Plaintiff and Appellant, Charles Neerdals. Basically, I have three arguments, and I'm going to start with the last one because it obviously interests you. My fallback position is that the case should be remanded to the district court for application of abatis. I always pronounced it abatis. I talked to Carla, abatis' attorney, and she told me that abatis pronounces it abatis. It reminds me of this Padilla case involving the gentleman who was accused of being the dirty bomber in and out of Navy Briggs in custody and the lawyers who had never met him because they were not allowed to confer with him. When they finally met him, the lawyer walks in and says, Mr. Padilla, which is the way anyone west of the Mississippi would pronounce the name, I'm delighted to finally meet you. And he said, My name is Padilla. Go ahead. Okay. In any event, on the issue of abatis, you may know that we had de novo review with the district court. The abatis initial panel decision came out while the district court case was pending and was cited and briefed. The grant of review en banc happened while the district court was pending, so nobody discussed abatis because we all were told it didn't matter. So all of our proceedings below happened without abatis. All of our briefing in this case happened without abatis. Abatis does change the mix substantially in this case because one of the key issues below was we had responsive evidence to the decision by Dr. Mercer. The Hartford had a decision. Hartford's initial denial only mentioned that Neerdals was not eligible. It did not in any way raise the question of whether he was disabled. In response to the appeal, they have an opinion by Dr. Mercer, and they say that he's disabled prior to March of 2006 or 2002 and disabled after April 27th of 2002, but not disabled in the intervening months. Neerdals has remitting and relapsing multiple sclerosis. He was diagnosed in 2000. He went off work in December 2001. Tried to return to work in March of 2002, worked for a few weeks, was unsuccessful, and resigned. The district court, as I understand it, applied a standard of review that is more deferential to your client? Yes, de novo review. And said that he was not entitled to benefits. Yes. If we were to conclude, that's a big if, if we were to conclude that the proper standard of review was abuse, where does that get us? We still win. Tell us why. Pardon? Tell us why. Okay, that's my second argument, or actually my lead argument. The evidence presented in reference to Neerdals' disability has to be looked at in the context of the policy. This is an own-occupation policy. The question that should have been asked and that was properly presented by the terms of the policy is, can Neerdals do his own occupation? Neerdals' own occupation, as explained by Neerdals and his employer, required fine motor skills. He was a software, or I don't understand technology, but he worked on a computer 30 hours a week. And his own job description said, I have to be able to do this. His employer's job description said, he has to work typing, can't be modified, can't be accommodated. The issue that was central, therefore, to the case, and that focuses on whether Neerdals could do his own job, is, can he actually type? The decision by Dr. Mercer, the evaluation by Dr. Mercer, again says, I concede that Neerdals has MS. I concede he was totally disabled until March 6th. I concede he was totally disabled after August 27th, 2002. By totally disabled, what Mercer was saying is he cannot do his sedentary job. And obviously, if Neerdals can't do his sedentary job, he can't do his own job. But Mercer never was asked and never addressed whether Neerdals can do his own job. And that own job requires the capacity to use a computer to type. Cassini, Neerdals' primary care physician, wrote reports and letters saying, you know, because of the MS, he has disabilities in his hands, he can't type. Neerdals' own presentation said, I can't type. However, if we're on a de novo review, the judge who has the case then has the abuse of discretion as to whether to take additional evidence, correct? Yes. And this judge certainly used that discretion. In fact, he typed out a long opinion about why or why not he would use additional evidence in this particular case, right? And he refused to admit the additional evidence. And he refused, based on his discretion, to admit the additional evidence. And he reviewed this on a de novo review. And if you go through his opinion as to how he construes the facts that you have now construed as well as to how he comes out with that decision, he runs through, I mean, I could read it to you, but I read through how he came and reviewed the particular evidence that you're now talking about. And he gets all the way to the end. He's the one who's having the hearing, having the opportunity to hear the witnesses, do what he has to do to come to the conclusions he has to come to. And as he gets to the end, he says, on a de novo review, not giving any, not giving any discretion to the insurance company, no disability. And he doesn't talk about no disability because he's really talking about no disability within a particular period of time. Because the insurance policy talks about a particular period of time. Not any time, but during this particular period of time to determine whether there's going to be any benefits. And so he, putting all of this in perspective as to the particular period of time which is important, which is the elimination period, then determines no disability. And gets a better review, your client, than they would get under a BATI. Gets a better review than they would get under the prior standard. And he still comes to the same point. If I go under a BATI, I say, well, he does a bad review. But he gets a better review. So what's the harm? Judge Fogle made two mistakes. Number one, he didn't admit the new evidence. And he had a discretion to, didn't he? He refused to admit it on the standards that were applicable at the time for de novo review. Under a BATI. Where does he say that in his standard? Read his opinion. I never saw anything in there in his opinion where he at all said he needed not do it. He went through very, in fact, he puts discretion as the first part of his opinion. He says, in my discretion, that's on page 270 of the record. Page four of his opinion. In the exercise of its discretion, the court declines to admit this evidence. As the circumstances do not clearly establish that these two items are necessary for the court to conduct an adequate de novo review. That's exactly our standard. I respectfully disagree, your honor. Under a BATI, given the factual scenario, again, when this new evidence is properly, perfect parallel to a BATI. In a BATI, the initial decision said you're not entitled to benefits because you didn't submit a waiver of premium claim. And the final denial said you didn't submit a waiver of premium and you're not totally disabled. Here, the initial denial was you're not eligible. And the final denial was you're not eligible and you're not totally disabled. The only time the issue of total disability was raised was in the final denial. Under a BATI, we would have the right to respond to that final denial and raise evidence responsive to the issue of total disability. What Judge Fogel-Fair didn't apply, because obviously a BATI wasn't in front of him, he said I don't need this for de novo review. I'm not considering it because it's not relevant. Isn't that what the judge stated, in effect? In effect. So the question is, what is your argument that it is relevant and he should have considered, because he definitely had it there if he wanted to consider it, and he said I'm not going to consider it, in effect, because it's not relevant to my determination. Obviously, if you look at his actual decision on the merits, when he made his decision on the merits, he said there's no contemporaneous evidence that Mr. Neerdals was disabled. Yet, these, the films show, they show his brain. His brain is cottage cheese. It's poked with holes. And the film was taken exactly at the time frame we're talking about. In other words, the issue that we have presented is, was Neerdals disabled between May 7, 2002 and August 27, 2002? These films were taken on July 3, 2002. They show big holes in his brain. So your argument is that the district court made an evidentiary error by not considering it when he said it wouldn't make any difference if I considered it. Yes. When you look at his actual decision on the merits, when he talks about what evidence he relies upon, his analysis is proven wrong by this new evidence, by Cassini's supplemental declaration, or letter, the 2003 letter by Cassini, explaining the scans and by the scans themselves. If you put this evidence in the mix, you have a different set of facts. Why couldn't he say that that evidence that you were proffering, he said, wouldn't make any difference? Why couldn't, why would it be error for him to say that I'm not going to consider it? Because Neerdals was denied a full and fair appeal. ERISA mandates that we have all the reasons. I mean, this is what Abatey says in its final opinion. We have the right to respond to what the issues are. When Neerdals was initially denied, it was simply you're not eligible. So that was the focus of the appeal. Now they're saying, but you're not disabled. That issue was never, Neerdals never had the right to address that issue in his appeal. It wasn't before them. Therefore, to remedy the defect, what Abatey says is, let the district court hear evidence responsive to the new grounds. Here, Hartford articulated a new grounds that wasn't part of its initial denial. We had the right to respond with new evidence. Some of that new evidence was obviously Cassini's opinion and the scans. We would have also offered, Neerdals was awarded Social Security. And, again, this is an own-occupation policy. The Social Security standard is you're disabled if you have, if you're disabled for your own occupation or any occupation. The SSA determined he couldn't do any occupation. Well, but once you get to Social Security, beginning with prospective determinations, and as I mentioned before, we've had Social Security, which was denied in cases where ERISA has been awarded. The two are not in parallel. In any policy, that may be true. But in an own-op policy, for Social Security to be awarded, the SSA has to say you can't do your own occupation. They have to make an explicit finding on that. So obviously the fact that Social Security made that finding is relevant to evidence that we never had in front of the judge. It's responsive to the new grounds that were articulated in the final denial. I think Abatey says you allow that new evidence in, and that changes the mix. Well, I'm not sure that Abatey says that, but the thing that worries me is this. In this particular case, in order for your client to establish that he's eligible to receive these benefits, he has to show he's disabled between May 6th and April 4th, and it seems to me you agree with that. Yes. And then in the court's decision, pages 276 through 279 of the record, he outlines all of the evidence that he took was determinative of this particular situation. Now, I can add additional evidence that he in his discretion said he didn't want to look at. But the bottom line is I have to determine that based upon what he did in a de novo review with the evidence outlaid that he sets out in these pages, and when his discretion says other evidence is not admissible, and given my standard of review, which I now have over what he did, I'm trying to figure out how I say he has abused his discretion in what he did in this particular situation. It seems to me that instead I'm seeing a person who went outside of what we normally would do in a review under Abatey, which is an abuse of discretion review, where he doesn't need to add any additional evidence, can just look at what the insurance company did themselves and give a higher standard if he thinks he needs to based on bias or prejudice or those nice words that the honorables used. But the problem is is that I come to the same conclusion. On my standard, how do I get there? Judge Fogle abused his discretion in two ways. He didn't admit the new evidence, which is properly admitted under Abatey to respond to the new issues. And the issue presented is can he do his own job? The only evidence on whether he can do his own job was presented by Cassini and by Neerdals. And the answer was no. Mercer doesn't address the capacity to type. He doesn't explicitly address it. He doesn't implicitly address it. Fogle doesn't address it. Fogle simply, even though this issue was clearly articulated in an argument, Fogle simply punched the issue. Can the man type? The analogy I put in my brief was if you have a concert pianist, yes, she can do a sedentary job, but if she has severe arthritis, she can't play the piano. Neerdals can't type. Just because he can't type, he can't do his own job. Just because he can't do his own job, he's entitled to benefits. Fogle never addresses it. That argues pretty well. But in the things that the judge did look at, it said that he was performing his occupation as a consultant in other situations. Seven hours. That he was doing other things that would seem to indicate that he did not have this disability. Now, yes, they didn't talk about type, and I understand your arguments. You made it in your brief. But, again, we're looking at the standard of review for a district court who's hearing all the evidence. And now I'm up here on appeal. Maybe I'm arguing this since I was there once. But now I'm saying to myself, how do I, given my standard of review, given that he gave you a better review than you would have got under a Beatty, how do I get there? As I said, he didn't admit the new evidence, and, yes, he talks about the evidence that Neerdals could do his own job through May 6th, but there is no evidence after May 6th. The fact that he can ride a bike doesn't mean he has fine motor skills. The question that was presented by the parameters of the case is, can this man do his own job? In order to address it, you have to address the actual job duties. Mercer doesn't do it. Judge Fogle simply didn't address it because nothing. That's why there's an abuse of discretion. Even if you look at the Silver case that I cited in my supplemental, in Silver, this court held, look, the man has a cardiac condition before, he has a severe cardiac condition after. Does it make sense? It's clear evidence that the district court was wrong in a factual finding. Well, Neerdals has MS. It's a condition that will never get better. The mere fact that at any given day he's marginally functional doesn't mean he's not disabled. I had a partner who had MS. He insisted. He was a senior partner. He could still try cases. He tried a case. It was an unmitigated disaster. We should have been sued for malpractice. Because the first and second days he was fine, and then his mind collapsed and his body collapsed. This man has a severe medical condition that's thoroughly documented. It's irrational to conclude that he was capable of working. Yes, he wanted to work. He's got little kids. He wanted to feed his family, and he tried. He couldn't do it. To hold that against him is to say that a man who tries to support his family should be penalized. The physical evidence, the medical evidence, is overwhelming here. The court's decision was an abuse of discretion, even under the most deferential standard. Okay. I think we've got your argument. You've teed it up very well. You've got three-and-a-half minutes or so to rebut what we hear from the other side. Mr. Rolstad? Thank you, Your Honors. May it please the Court. Dennis Rolstad for the defendant and FLE, the ERISA plan at issue, the STD and LTD plan for employees of Akamai Technologies. Your Honor, I believe and we would support that the trial court correctly granted judgment to Hartford here. What's most important and was most important to the trial court was the contemporaneous evidence. Going back through briefly, this individual, the appellant, had MS before he ever worked for Akamai. He then had worked for Akamai for several years with MS. So he's demonstrated that just having that condition does not disqualify him from working, does not cause him to be disabled. The cases are clear on that, that it's not a condition itself that gets you benefits under ERISA in disability anyway. You've got to be able to show that you're unable to perform, in terms of this policy, the essential duties or any essential duties of your occupation. During the time period issue here, as the trial court found, there was no evidence showing that he could not work any of these essential duties, whether it's typing or anything else. My friend across the aisle says that the district court erred by not considering evidence which would have demonstrated that he could not do his job during the window which he was required to demonstrate. Why was it not an abuse of discretion for the district court to find that that additional proffered evidence was not to be considered? It wasn't relevant, in effect, he said. Well, because this additional evidence did not answer the question that was before the court on de novo review. Here, as well stated, the court's not giving any discretion at all to the opinion of the claims administrator. It's looking at all the evidence anew, and the standard under de novo, which is much stricter than the standard under discretionary, is, well, simply, is this evidence I need to help make my decision? Is this evidence that answers the question, the ultimate question here is, was this individual disabled at the time he quit work or the 31 days thereafter? The evidence presented didn't answer that question. It was brain scans taken as part of the UCSF study that simply show that somebody has MS. Well, his argument is that if he had MS and he couldn't do his job at X point plus 10, it would be some evidence that he couldn't do his job at X. In other words, evidence of a disability sometime past the window that he has to show the disability was manifest, would be relevant to show that, yes, if he had this disability a year or two after the window that he has to prove he had the disability, that it would be evidential to prove he had the disability during the crucial window that he was required to prove. Well, I don't think it's relevant at all. And, in fact, the court, the cases are legion that self-serving evidence can be discarded, particularly when it's not supported and when it's contrary to other evidence in the file. Here we have evidence throughout the time when he went back to work. He was on short-term disability for a time, so he knew short-term disability was available to him. His doctor, Dr. Cassini, released him to work, so he starts working again. His employer later stated, after he went back to work, he performed all the duties and he was on full payroll. All right, he went in to see his doctor during this time period. There's no problem. In fact, the doctor says he's getting better. I'm paraphrasing. He sees his doctor a month after he quit work, and there's no discussion at all that he quit due to disability. He quit to spend more time with his children. He quit to do some consulting work twice a week. Now, this is six months before the evidence, the only evidence in the file of the seven hours that counsel refers to. And as the trial court said, well, we don't know that it's only seven hours. Here he's talking to his doctor about it six months before. But nonetheless, he's not telling his doctor, and his doctor is not saying you can't outwork because of disability. There's no discussion about that at all. And then... Well, could we, I don't want to sum up, is your argument in effect is that these doctors have certified he can do the job during the crucial time period, and that it's not an abuse of discretion for a district judge to say, I'm not going to let those same doctors say at a distant period of time that when I originally said that he could do the job, now I say I was wrong about that in that diagnosis or prognosis. Well, I certainly agree with that, because it's the contemporaneous... Is that your argument that I'm trying to... It's hardly argument, Your Honor. What's the other part? It's the entire argument, because I'd go back to the brain scans themselves, which are part of the UCSF study that certainly I could talk and will talk more about, only show that somebody has MS. It makes no relation between the condition and ability to perform an occupation. We know that he worked with MS. We know that his employer was satisfied with his work while he had MS, said he was performing all his duties. So the mere fact he has MS, as shown by the brain scans, doesn't answer the question of was this individual disabled. The only other evidence that plaintiff attempted to put before the court was Dr. Cassini's 2005, this is three years after the fact, answer to questions posed by counsel that he put in the form of a letter. And the court rejected that because it was not limited in time to this window we're talking about. In fact, you read that letter, it appears that, well, you're talking about condition today, you're talking about some increasing condition, but it didn't answer the question what was the plaintiff's condition at the time, at the window, at the time he quit work and the 31 days thereafter. So I would say under DeNovo the court certainly did not abuse its discretion in refusing to further consider this evidence because it didn't answer the questions before him. I think something important, we've talked about abete here, certainly abete is not at issue at all unless you found the court did not properly grant judgment under DeNovo. Then it would be remanded to apply abete because, of course, abete wasn't applied here. But the additional evidence on abete is only to show how much discretion to give to the claims administrator. Once you do that, abete does not mean that you get an opportunity, the plaintiff gets an opportunity to respond to the last evidence on appeal. That is not the law, Your Honors, I respectfully suggest. What do we make the initial denial being based on not an active full-time employee and then subsequently it's that plus not disabled? I believe that the initial letter was, yes, inartfully drafted, but I believe that's a nice way of putting it. Well, under abete, however, I don't think the difference between the two letters is sufficient to greatly reduce the discretion the court would provide to Hartford. What the claims administrator saw initially with the application was, here's somebody saying that they're disabled ten months after they quit work, but their policy is already terminated. And so that's the response that came back. Well, your evidence shows you're disabled ten months later at best. We don't even have to look at that because your policy has long terminated. That's the response they gave initially. I don't think that's at all inconsistent with the later response. Then they got more information and they sent it out to Dr. Mercer. They got the UCSF studies and responded with more detail in the appellate denial letter. Under abete, at most, the court may reduce the discretion a little bit, maybe a bunch, but they're still going to give discretion to the claims administrator. So if the trial judge is going to grant judgment using de novo, I would expect the trial judge to be consistent, employing any discretion at all if this was remanded is going to grant judgment to Hartford as well. The UCSF studies, of course, this is a neutral party. I think they're very important. We've got quite a bit of that material in the record showing that a plaintiff's gone through a battery of tests beginning a month after he quit work through the end of the year where the UCSF study finds that he's got minimal disability, if any, consistently. And those are very detailed in the record. Very tough to defeat that evidence, certainly on discretionary review, just as it was under de novo review, Your Honors. I don't see any other questions. If you're done, thank you for your argument. We appreciate it. Thank you very much. We'll hear a rebuttal at this time. Counsel? On the issue of the new evidence, Dr. Cassini's May 20, 2005 letter at excerpts page 109 concludes, after reviewing the scans, there is clear evidence by MRI, serial neurologic exams and evaluations by myself and neurologists at UCSF that Neerdals has MS. MS is a disorder that attacks the brain and spinal cord in a random fashion, causing progressive problems with vision, cognitive function, strength, sensation, and coordination. Based on the review of the medical records, Neerdals' MS had caused sufficient permanent damage by January 2001 that he could no longer work, even in a sedentary capacity. That's the evidence we offered in response to Mercer's opinion. Under Abeyte, because the Abeyte decision at page 974 about admitting new evidence on the merits, the Abeyte decision says, if you violate the applicant's right to a full and fair appeal, first, that goes to the standard of review, but second, the proper remedy is to admit new evidence on the merits. We offered new evidence on the merits. And, of course, at this point, when we were trying this case, we had no right to conduct discovery as to Dr. Mercer's opinion. When you dig into these services that provide medical opinions, you find that frequently, and I don't know if the University Disability Consortium does this, but I know that others do, you find that the agencies instruct the doctors to consider certain things and not other things, that they give them selected evidence. We would have the right to investigate that. This would lower the deference given Mr. and Dr. Mercer's opinion. But, again, I come down to the central point. New evidence should have been admitted. It was an abuse of discretion. Therefore, the grant of summary judgment was improper. And, second, Judge Fogel, neither Judge Fogel, not Hartford, not Dr. Mercer, they never addressed Mr. Neerdals' own job. And that's the issue in the policy. This is a contract. He's entitled to benefits if he can't do his own job. They have no evidence that he can do his own job. We presented unrebutted evidence that he can't. And on those grounds, Neerdals was entitled to the judgment. And, certainly, the judgment in favor of the Hartford, or the plan, should be overturned. Thank you. Thank you for your arguments. Thank both sides for their arguments. A very interesting case. We'll proceed, and it will be submitted at this time.
judges: Hawkins, Smith, Cowen